UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

HILARY N. CHULOCK, ESQ.,   Case No: 9:14-cv-80941

Plaintiff,

vs.

STEINGER, ISCOE & GREENE, P.A. a Florida professional association,
STEINGER ISCOE GREENE &
MCAFEE, P.A., a Florida professional Association,

Defendants.
_____/

**AMENDED COMPLAINT**

Plaintiff, HILARY N. CHULOCK files her Complaint and alleges as follows:

I.   BACKGROUND

1. This is a Whistleblower and Gender Discrimination action contemplated, respectively, under the Florida private-sector whistleblower's act 448.101, et seq. FLA.STAT (2013); Title VII of Civil Rights Act of 1964 as amended ("Title VII"); and FL Statutes - Title XLV Chapter 770. This case involves the improper termination of Plaintiff HILARY N. CHULOCK by the law firm(s) STEINGER, ISCOE, GREENE, P.A. ( "SIG") & STEINGER, ISCOE, GREEN & MCAFEE, P.A. ("SIG&M"), collectively ("THE FIRM") for revealing to her employers that she

had learned of their participation and involvement in an unethical and criminal enterprise by engaging in the practice of misrepresenting to medical providers the actual gross settlement amounts of personal injury cases in order to gain unlawful monetary compensation. This brazen criminal scheme was accomplished by the combined practices of:

    A)    colluding with a regular group of carefully selected medical providers with whom SIG and SIGM maintained an ongoing relationship to provide expensive and unnecessary medical treatment to the firm's accident and injury clients; and,

    B)    in return, the providers would receive a steady stream of lucrative referrals from SIG and SIGM. All services were signed under Letters of Protection ( "LOP's"). The providers who cooperated with SIG and SIGM ran up exorbitant fees and expenses allegedly related to the clients' "medical treatment", which would be negotiated at the end of any settlement with the insurance companies. This unethical and criminal scheme benefitted not only the providers, but also SIG and SIGM at the great expense of both the client and the insurance companies. The insurance companies were fraudulently duped into settling cases for much higher amounts than they otherwise would have, based upon the exorbitant medical expenses submitted.

2.    However, oftentimes the medical expenses were so high that they exceeded the policy limits and/or the authority of the insurance company. In *those* instances, SIG and SIGM gave some of THE FIRM's employees instructions to misrepresent the gross settlement amount to lower figures to the providers, the very parties that they originally colluded with, than the actual amount for which it had settled.

3. These actions thereby enabled the law firm to settle the case expeditiously in order to get their fees quickly, and would extinguish the fees due to the provider. The frequent result of these illegal and unethical practices was that the client received nominal and sometimes absolutely NO compensation for his injuries.

4. In the meantime, the firm unlawfully profited from the calculated misrepresentations made to all involved: the provider, the insurance companies, and not the least of which, the client, who often had undergone painful and unnecessary treatment and surgeries.

5. Upon Claimant's discovery of the illegal and unethical practices of SIG and SIGM, Plaintiff HILARY CHULOCK, immediately notified her direct supervisor Sean Greene of her discovery of these illegal practices and also attempted to notify William McAfee in the same meeting.

6. SIG and SIGM's immediate response was to terminate Plaintiff's employment, with no notice, in an attempt to rid themselves of an employee who had knowledge of their ongoing systematic fraudulent practices. As a relatively new employee of four months, Plaintiff requested a meeting of Sean Greene in the presence of the entire litigation team of the Ft. Lauderdale office . William McAfee was also present. The very next day, after Plaintiff was terminated, she sent a Preservation Demand ( attached hereto as Exhibit 1 ).

7. Additionally, prior to her termination, Plaintiff had routinely complained of patent gender discrimination to her employers, which will be set out more fully below in the allegations below.

II. **JURISIDICTION AND VENUE**

8. Plaintiff asserts claims against Defendants under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") which arises under the laws of the United States over which this which this Court has original jurisdiction.

9. Parties began the proceedings in arbitration through the American Arbitration Association ("AAA") pursuant to a "Mandatory Arbitration Agreement" (Attached hereto as Exhibit 2) that Plaintiff contends was not valid. Notwithstanding and due to the extensive discovery necessary in this case, complete discovery cannot be accomplished in the time frame that was set out by the Arbitrator. Plaintiff had requested a minimum of a nine-month period of time in which to pursue discovery which is in the exclusive control of the Defendants but was only given 4 months until her final hearing.

10. Plaintiff had inquired from AAA what the proper course was to remove the case from Arbitration to Federal Court through its official website. (Attached hereto as Exhibit 3)

"What is the proper procedure to transfer a case to Federal Court and still maintain the ability to arbitrate if the case is remanded back to arbitration. Do I file a voluntary dismissal without prejudice? A motion to stay the proceedings? Please advise."

11. AAA's response:

" If you have a matter currently pending before the American Arbitration Association, and you would like to move it to a different venue, you will need to contact your Case Manager to let them know you wish to close the matter. All other procedures are with the court system, and they would be able to provide answers for their filing requirements.

Sincerely,

Jill Janzen"

4

12. All conditions precedent delineated in Paragraph "11" have been met.

13. SIG is incorporated and transacts business in Palm Beach County, Florida.

14. The case meets the jurisdictional threshold of over $75,000.

III. **PARTIES**

15. HILARY CHULOCK is a female attorney who is admitted to practice in Florida and who was formerly employed by Steinger, Iscoe, & Greene, P.A and its subsidiary Steinger, Iscoe, Greene & McAfee, P.A. until she was wrongfully terminated on July 12, 2013. She at all times material was an "employee" as envisioned § 448.101 (3), FLA.STAT. (2013), Title VII and the Ordinance.

16. Defendant Steinger, Iscoe & Greene, P.A. ("SIG"), and its subsidiary, respondent Steinger, Iscoe, Greene & McAfee, P.A. (SIG&M"), (collectively "the Firm" unless otherwise noted) are Florida professional associations and "employers" as envisioned by § 448.101(3), FLA. STAT. (2013), Title VII and the Ordinance. Together, SIG and SIG&M controlled the terms and conditions of plaintiff's employment.

17. SIG mandated that Plaintiff execute an arbitration agreement that she had never seen before three months into her employment. She was threatened with being fired on the spot if she did not sign the agreement immediately upon its presentation. (Arbitration Agreement attached hereto as Exhibit "2".)

18. Hilary Chulock's direct supervisor was Sean Greene. Sean Greene was a Principal of Steinger, Iscoe & Greene, P.A., but he was not a regular employee of SIG&M. Sean Greene

worked out of the SIG office of Port Saint LuciE, FL. Nevertheless, Petitioner was expected to report to him on a daily basis.

19. The three main principals of Steinger, Iscoe, & Greene, P.A. are also the three (3) main principals of all nine (9) locations throughout Florida and, even a location in California, effectively making Steinger, Iscoe, and Greene, P.A. a brand.

20. All marketing of SIG is conducted for the benefit of SIG&M, and in fact, for the benefit of ALL of SIG's nine (9) firms.

21. There is a single 1-800 telephone number that services all nine of the SIG locations, including SIGM.

22. William McAfee was the managing partner of SIG&M. Upon Ms. Chulock's unlawful termination, he informed her "This was not my decision."

23. There was only one individual employed as the Human Resource Director of all of SIG's law firms. That individual's name is Jeff Roth.

24. SIG and SIGM were joint employers of Petitioner in every sense of the word.

### General Allegations

25. Plaintiff left a seven-year career with a blue-chip insurance company in order to accept the promised position offered by SIG &/or SIG&M. In her 14 years of practice, Plaintiff has

never had any bar complaints, client complaints, reprimands or any other disciplinary actions against her. Rather, she is known throughout the legal community to be fair, ethical, truthful.

26.   Defendants told claimant at the time she was hired that she, along with Steve Mitchel, would co-head the litigation department for the Fort Lauderdale Office.

27.   At the time she was hired, claimant was one of only two women among the nearly thirty 30 attorneys employed by the Firm in ( at the time) its eight offices statewide and the only female litigation attorney. The only other woman attorney was the wife of William McAfee, the managing partner of the Fort Lauderdale Office where claimant was assigned.

28.   Soon after being hired, claimant learned from a work colleague that women generally were not hired for litigation because the partners thought they "were not aggressive enough."

29.   Plaintiff entered into an oral agreement with SIG/ SIG&M on or about February 6, 2014, wherein, Claimant agreed to co-head the litigation department for the Ft Lauderdale office of SIG, also known as SIG&M, along with another employee, Steven Mitchel, for the sum of $125,000, in addition to which would include ten (10)% of all attorneys' fees of cases in which she settled or tried. In addition, the agreement included that she would receive paid medical and dental expenses for her entire family at the expense of the firm, as well as life insurance. In return, she was required to generate attorneys' fees in the amount of $1 million per year on a pro rata basis. That was the oral agreement in totem. That oral agreement took place between William McAfee and Plaintiff.

30. Thereafter, on May 30, 2013, Plaintiff was presented with a Mandatory Agreement to Arbitrate Claims by an agent of SIG and/or SIG &M. When Petitioner questioned the agreement being presented at such a late date, she was threatened with immediate termination if she did not sign the agreement.

31. Notwithstanding that she had been hired to "co-head litigation" at the Fort Lauderdale Office along with Steve Mitchel, within weeks of claimant's employment, named-partner Sean Greene told Plaintiff that *he* was now going to head up the litigation department with no further explanation.

32. At or about the time Sean Greene took over litigation in the Fort Lauderdale Office, one of Plaintiff cases, the "N-T case," was close to settling for $325,000 to $350,000 due to the efforts of Plaintiff.

33. On or about June 13, 2013, the Firm discretely hired Louis Battista for the litigation department. Battista was a former colleague of partner Sean Greene at a law firm at which they both had worked in the past. At the time of Battista's hiring, it was noted by both Steve Mitchel and Plaintiff that a position had been created to accommodate him despite a shortage of higher value litigation cases for Mitchel, Battista and Plaintiff.

34. After the hiring of Louis Battista:

a. Louis Battista, Sean Greene and Steve Mitchel went out to lunches from which claimant was intentionally excluded and gathered regularly in each other's offices;

b. a new wing in the Fort Lauderdale Office was being readied for occupancy by the senior litigators and the men, including Mitchel, Battista and Greene were invited to occupy space there, but claimant was not, despite a fourth office being available, thereby intensifying claimant's alienation;

c. Sean Greene took away five of Plaintiff's most lucrative cases that were close to settlement and gave them to Louis Battista; and

d. as to the "N-T case," despite the fact that Plaintiff had worked up the case to point of settlement, Sean Greene assigned the case to Louis Battista as first chair, Steve Mitchel as second chair and told claimant that she could "assist."

35. Claimant, in or about June 2013 complained to Sean Greene that the Firm's conduct was representative of an "all boys club" and, thus, discriminatory based on her gender.

36. After claimant's five cases were reassigned, Sean Greene told claimant's legal assistant to lie to physicians in the "N-T cases" and tell them that the case had settled for $85,000, although it eventually settled for $335,000, and to "negotiate them down" with regard to their fees.

37. At around the same time, claimant learned from two other associates the following information:

a) That "The Firm" had made collusive agreements with several medical providers, that in exchange for SIG and SIG&M's client referrals to the medical providers, the medical providers

would give Clients "favorable" diagnoses and would relate them to the accidents alleged by The Firm, even if they were not.

b)      The Medical Providers would then have a steady stream of clients/patients that would come through their door. The clients, in turn, would often receive unnecessary and expensive medical treatment, including surgeries.

c)      This would not only benefit the medical provider, but would benefit The Firm because it would increase the value of their claims.

d)      Ultimately, the insurance companies were forced to settle at inflated claims due to this collusive arrangement.

e)      Oftentimes, the client would end up in worse physical condition due to the unnecessary surgeries and treatment.

f)      Most of the clients were indigent and were without insurance, making them the perfect victims for this criminal and unconscionable conspiracy.

g)      Claimant also learned that SIG and SIG&M had previously been accused of wrongdoing involving SIG and a collusive medical provider, wherein a former employee by the name of Robert Reynolds was a "whistleblower". SIG launched an "internal investigation". Robert Reynolds is no longer employed by The Firm.

38. Settlement of cases such as the "N-T cases" involved the use of telephone and United States Mail communications in interstate commerce.

39. Plaintiff, on or about July 9 or 10, learned that her legal assistant had misrepresented the amount of the settlement to a physician who had treated the firm's client, a claimant in another case (the "JB" case), in a similar attempt to carry out Sean Greene's instructions to "negotiate them down" with regard to this particular physician's fees.

40. In a litigation meeting that same day, in the presence of four other attorneys, including partner William McAfee, claimant attempted to bring up what she had learned from the legal assistant, but was silenced by Sean Greene.

41. Still later that same day, claimant reported to Sean Greene and William McAfee what the legal assistant had done, and attempted to discuss what she believed to be the implications of the collusive practice of a particular medical provider, Dr. Amos Dare, and his relationship with The Firm as summarized above. This relationship was a continuing source of discord among some of the partners.

42. Defendants, on July 12, 2013, terminated Plaintiffs employment, claiming that she, not Sean Greene, gave the instruction to the legal assistant to "negotiate them down" with regard to the medical provider's fees.

## COUNT I - WHISTLEBLOWER CLAIM

43. Plaintiff re-alleges the matters set forth in paragraphs 1 through 39 above.

44. Plaintiff, during her employment by Defendants, objected to or refused to participate in an activity, policy or practice of SIG and SIG&M that is in violation of a law, rule or regulation as more particularly described below:

**Violations of Laws, Rules and Regulations**

45. Defendants misrepresented the amounts of settlements in order to "negotiate down" the medical providers' fees, which violated laws, rules and regulations pertaining to the business of the Firm, as envisioned by § 448.101(4), FLA. STAT. (2013), including but not limited to:

a. 18 U.S.C. § 1341 ("Frauds and swindles");

b. 18 U.S.C. § 1343 ("Frauds by wire, radio or television");

c. 18 U.S.C. 1956(a)(1)(B)(i)("Laundering of monetary instruments"); and

d. various sections of Chapter 817, Florida Statutes (2013), Fraudulent Practices.

46. Defendants retaliated against Plaintiff in the terms and conditions of her employment on account of her gender, which violated the anti-discrimination and retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Florida Civil Rights Act of 1992, §§ 760.01, et seq.

**Retaliatory Personnel Action**

47. Plaintiff's protected activity as alleged above was a motivating factor that made a difference in Defendants' decision to fire claimant. Defendants' stated reasons for its decision to terminate claimant were not the real reasons, but were given to hide the retaliation. Up until the time of her termination, Petitioner had routinely been praised for her work, and lauded for the number of difficult cases that she had settled in short order. Plaintiff had never once been criticized or admonished for any reason during her tenure at The Firm.

48. The Firm's terminating claimant constituted a "retaliatory personnel action" as envisioned by § 448.101(5), FLA. STAT. (2013), i.e., an "adverse employment action taken by an employer against an employee in the terms and conditions of employment."

**Damages and Remedies Sought**

49. As a direct, natural, proximate and foreseeable result of the Firm's retaliatory personnel actions, claimant has suffered past and future monetary loss, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

50. Claimant is entitled, pursuant to § 448.103(2), FLA. STAT. (2013), to:

a. an injunction restraining continued violation of this the Florida Whistle-blower's Act;

b. reinstatement to the job from which she was fired, or, if that is not practicable, an award of front pay;

c. reinstatement of full fringe benefits and seniority rights;

d. compensation for lost wages, benefits, and other remuneration; and

e. any other compensatory damages allowable at law.

51.     Plaintiff is entitled, pursuant to § 448.104, FLA. STAT. (2013), to recover her reasonable attorney's fees, expenses and court costs.

WHEREFORE, claimant, Hilary Chulock, prays for an award:

1) For her and against Defendants, Steinger, Iscoe & Greene, P.A. and Steinger, Iscoe, Greene & McAfee, P.A., jointly and severally, for compensatory damages pursuant to section 448.101, et seq., FLA. STAT. (2013);

2) Granting her such other and further relief as the circumstances and law require and/or provide, including but not limited to, injunctive relief, back wages and benefits, pre-judgment interest, seniority and prospective relief, including either reinstatement or front pay;

3) ordering respondents to pay claimant her costs, litigation expenses and reasonable attorney's fees pursuant to § 448.104, FLA. STAT. (2013): and

4) granting such other and further relief as may be just.

## COUNT II - TITLE VII GENDER DISCRIMINATION

52.     Plaintiff realleges the matters set forth in paragraphs 1 through 48.

53.     Plaintiff, on or about January 17, 2014, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") ( Exhibit "3")..

54. She was the only woman in the litigation department of the entire nine (9) office law firm and was hired to be the co-head of litigation.

55. Upon her arrival to the firm, partner, Sean Greene showed Plaintitt an outward disdain on a regular basis.

56. Upon Plaintiff's beginning her employment with the law firm, Sean Greene announced that *he*, and not Plaintiff, would now head the litigation department.

57. Once Sean Greene took over, the litigation department, Plaintiff's most valuable cases were transferred to a brand new male attorney, Louis Battista, who was hired as a friend of Sean Greene's.

58. In the same meeting that Plaintiff's five best cases were awarded to Louis Battista, Sean Greene then requested that her co-head of litigation, a male attorney, turn over only his five *lowest* value cases. There was no attempt to make an equitable distribution of the cases and no rational reason for not doing so.

59. Plaintiff was routinely excluded from regular meetings of the the all-male litigation department. When she complained to Sean Greene about his discrimination as an "all-boys club", she was ignored.

60. When the litigation department was transferred a completely renovated new wing, built specifically to house it, she was excluded from what would have been her own office and forced to remain in her old office separate and apart from the other members of the litigation team.

61.     The EEOC, on May 16, 2014, issued a Notice of Right to Sue, giving Plaintiff the right to bring a civil suit, within 90 days of which Plaintiff has demanded. (Exhibit "4")

62.     Defendants' behavior towards claimant was based on her sex and, thus, constituted sex discrimination as proscribed by 42 U.S.C. §2000e-2(a).

63.     As a direct, natural, proximate and foreseeable result of the actions of Defendants, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

64.     Defendants' conduct was undertaken willfully, maliciously and, particularly as attorneys, in knowing violation of claimant's rights under Title VII and, as such, entitles claimant to an award of punitive damages in an amount sufficient to punish claimant and to deter similar action in the future.

65.     The discrimination that plaintiff is suffering, in violation of the statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

66.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff, Hilary Chulock, prays for an award:

1) declaring that Defendants' practices toward claimant violated her rights against sex discrimination under Title VII;

2) enjoining Plaintiffs and their agents from continuing to violate claimant's statutory rights under Title VII and making claimant whole through back pay and benefits, reinstatement or, if that is impracticable, front pay;

3) for Plaintiff and against Defendants for damages, including compensatory and punitive damages;

4) granting Plaintiff her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k); and;

5) granting Plaintiff such other and further relief as the circumstances and law provide.

### COUNT III: RETALIATION CLAIM UNDER TITLE VII

67. Plaintiff re-alleges the matters set forth in paragraphs 1 through 56.

68. Plaintiff believed in good faith that Defendants' behavior towards her was based on her sex and, thus, constituted sex discrimination as proscribed by 42 U.S.C. § 2000e-2(a).

69. The actions of Defendants violated plaintiff's rights against retaliation under the "opposition clause" of Title VII.

WHEREFORE, Plaintiff, Hilary Chulock, prays for an award:

1) declaring that Defendants' practices toward Plaintiff violated her rights against retaliation under Title VII;

2) enjoining Defendants and their agents from continuing to violate Plaintiff's statutory rights under Title VII and making claimant whole through back pay and benefits, reinstatement or, if that is impracticable, front pay;

3) for Plaintiff and against Defendants for damages, including compensatory and punitive damages;

4) granting Plaintiff her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k); and

5) granting claimant such other and further relief as the circumstances and law provide

Respectfully submitted,

/s/ Hilary N. Chulock

HILARY N. CHULOCK, ESQ.

Florida Bar No: 672602

HCHULOCK@icloud.com

935 NE 125TH ST

North Miami, Florida

(305) 332-1064

Pro se Claimant, Hilary Chulock

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing has been furnished via email on this 16th day of July, 2014, to Counsel for Defendants: steve@schwarzberglaw.com, lkohring@schwarzberglaw.com, ygorosito@schwarzberglaw.com.

/s/   Hilary N. Chulock
Hilary N. Chulock, Esq.
Pro Se Plaintiff
935 NE 125th ST
North Miami, FL 33161
(305)892-0456
hchulock@icloud.com