UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

HILARY N. CHULOCK, ESQ.                    CASE NO: 9:14-CV-80941

Plaintiff,

v.

STEINGER, ISCOE & GREENE, P.A.,
and STEINGER, ISCOE, GREENE & McAFEE., P.A.,

Defendants.

_____/

**RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO COMPEL ARBITRATION/MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

**I.   Background**

Defendants', STEINGER ISCOE & GREENE, P.A. and STEINGER ISCOE GREEN & MCAFEE,, P.A, ( hereinafter, alternatively referred to as SIG and SIG/M and "The Firm"),  version of the circumstances surrounding the termination of  Plaintiff is at great variance with the truth.  SIG/M terminated her not because of any wrongdoing on her part, but because of her discovery of their ongoing criminal behavior, her immediate reporting of it once discovered to her direct supervisors, Sean Greene and William McAfee,  and their urgent need to continue to cover up their ongoing criminal behavior which has dominated their

1

business operations for years.  The Firm possesses all of the recorded documentation of their extensive and ongoing criminal behavior and fraud. They are desperate to protect that information from discovery at all costs: from the public, this Honorable Court, and their own clients.

Plaintiff protested her termination immediately because of her immediate recognition of what was transpiring, i.e., an attempt get rid of an employee who had learned too much and now had to be silenced immediately.   In a meeting called to terminate her, Plaintiff was completely flummoxed by SIG's version of the facts and and their version of who had committed the wrongdoing, since she had just met with both of the principals the day or two before to *report* the unlawful behavior, only to be *accused* of it.   After reporting the behavior  to William McAfee and Sean Greene,  the very two principals who, *for years,* have committed collusive criminal acts,  Plaintiff was then terminated immediately and defendants tried to shift their blame   to Plaintiff for a wrongdoing for which they both knew, she was completely blameless.

At that time, she protested her termination  to the Human Resources Director Jeff Roth, and to William McAfee ( Sean Greene was notably absent from this termination meeting) that she recognized that her termination was at Sean Greene's direction , as an officer of SIG/M, because of his need to hide his criminal acts and those of SIG/M,  and instead to blame an innocent employee who had just

2

discovered and reported the behavior. In fact, William McAfee "you know this is not my decision."

About a month prior to her termination, in Plaintiff had also reported blatant gender discrimination to her direct supervisor, Sean Greene. This report was not well-received. This type of retaliatory firing is a classic reaction in a Whistleblower Claim, where an unknowing employee stumbles upon evidence of wrongdoing that the wrongdoer wishes at all costs to conceal. Defendants have a long-standing pattern of firing employees who have learned too much, and thus, there is a high turnover of both attorneys and staff in their law firm.

Plaintiff was aware at the time of her termination that SIG and SIG/M and its principals have in their complete possession and control all of the "recorded" evidence and documentation of the criminal and collusive scheme, and the evidence of who has given the orders to commit the criminal acts . For this reason, the next day following her termination, Plaintiff sent Defendants a Preservation Demand on Saturday, Saturday July 13, 2013 for all documents and for any and all evidence to support her unlawful termination. ( Exhibit 1). Defendants continue to maintain the exclusive control of all documented evidence to support the facts of Plaintiff's termination and they attempt to thwart any attempt to have these records revealed. The very act of sending a preservation demand the next day after

termination is hardly the act of someone who wishes to hide something, but is rather the act of someone who wishes to preserve and discover the truth.

## II.  THE ARBITRATION AGREEMENT IS NOT VALID

### A.     PROCEDURAL UNCONSCIONABILITY

Defendants employed coercion and threats to Plaintiff in order to force Plaintiff to sign a "Mandatory Arbitration" agreement that she verbally objected to signing at the time of presentation of said agreement. Approximately eleven weeks after beginning her employment, Plaintiff was presented with a Mandatory Arbitration Agreement that she had never agreed to, was unaware that such an agreement would be presented, and had never seen prior to the moment it was presented to her by the then Human Resources and Office Manager, Jennifer Fitzgerald.

When Plaintiff inquired, "What is this?", Jennifer Fitzgerald replied that Sean Greene and Gary Iscoe had stated that Plaintiff would be terminated today "if you refuse to sign it." She said, "today will be your last day if you do not sign this." Ms. Fitzgerald placed the document on Plaintiff's desk with no further explanation of the contents of the document and handed Plaintiff a pen and stood there awaiting Plaintiff's immediate signature. Plaintiff then stated her intention to telephone SIG/M Principal Gary Iscoe to discuss the fact that she had not agreed to

be bound by a mandatory arbitration agreement and that this was a substantial, substantive, and unconscionable change to the terms of her employment. She expressed these concerns to Ms. Fitzgerald; stating that she had never seen the document prior to that moment; and that she required more than a moment's notice to review it. Jennifer Fitzgerald informed her that Mr. Iscoe would not discuss the matter, and she demanded that Plaintiff backdate the instrument to the beginning of her employment, which Plaintiff refused to do.

Ms. Fitzgerald stated that she had already spoken with Mr. Iscoe who had given her explicit instructions to obtain a signature from Ms. Chulock immediately. Ms. Fitzgerald said that she had strict instructions to convey the consequences of not signing the document to Ms. Chulock including: (1) immediate termination and (2) withholding disbursement of earned compensation to Plaintiff. Ms. Fitzgerald instructed Ms. Chulock to "sign this now" or "turn in your cell phone now, and if you have any keys, turn in those too."

The fact that the Plaintiff was instructed to "backdate" the arbitration agreement is prima facia evidence that SIG/M knew that it was unfair to present the agreement at such a late date after all of the terms of her employment had already been agreed to by both parties before she had resigned from Traveler's and accepted the position with SIG/M—the only time that she had bargaining power. The fact that they demanded that the instrument be backdated is evidence that they

intended to misrepresent and conceal the fact that the mandatory arbitration agreement was presented at a much later date than the beginning of or, even prior to, her employment. With the presentation of the arbitration agreement under these circumstances, SIG/M coerced the Plaintiff into signing a document that she would never have signed under ordinary circumstances prior to accepting employment with SIG/M. The fact that the Plaintiff already had concerns regarding gender discrimination and a high discharge rate of attorneys from SIG/M is indicative of an agreement that a reasonable person would not agree to under ordinary circumstances without threats, coercion and duress. The agreement forced Plaintiff to waive considerable legal rights and remedies. Defendants also demanded that she backdate the document to the date to her employment start date in an attempt to force Plaintiff to further waive her right to preserve factual evidence of the circumstances of the signing.

There are two versions of the signature page of the arbitration agreement. The presence of the two versions is evidence of the circumstances of signing and the high pressure tactics and coercion used to attempt to induce the Plaintiff to backdate the agreement as detailed above. Ms. Fitzgerald did not sign the agreement in the presence of Ms. Chulock. Ms. Chulock signed the agreement and dated her signature with the correct date in the absence of Ms. Fitzgerald who had momentarily left the room to use the restroom. Ms. Chulock used that opportunity

to discreetly make a copy of the agreement with her signature and the correct date, because she was concerned that Ms. Fitzgerald would change the date next to her signature given the conversation that had just transpired between them.  Ms. Fitzgerald returned to Plaintiff's office and demanded that Plaintiff hand over the signed agreement.  The plaintiff complied.  Plaintiff requested a duly executed copy of the agreement.  Ms. Fitzgerald stated that she would provide it, but never did.  Plaintiff retained her own dated copy as evidence of the circumstances and actual date of signing.  SIG/M has produced their filed copy of the executed agreement, as documentation in this civil action.  The document has Ms. Chulock's correctly dated signature and the signature of Ms. Fitzgerald which is undated.  It is clear from an examination of the file copy provided by SIG/M that a date next to Ms. Fitzgerald's signature has been whited out and removed. This key piece of evidence requires further inspection of the original document produced by SIG/M.

At the time of signing the document, the Plaintiff was under considerable duress to immediately sign the document under "take-it-or-leave it" demand as a new absolute condition of her employment.  Plaintiff, with the pressure of urgency to sign imposed by Ms. Fitzgerald was placed in extreme condition of duress.  It was late on a Friday afternoon near the time of office closing that this conversation took place.  Plaintiff was desperate to solicit the opinion of the managing partner of the Fort Lauderdale office, William McAfee.  She took the document in hand and

walked down the hall to his office. He had left for the day. She was assured by Ms. Fitzgerald that she already had the explicit instructions already from Mr. Iscoe that it was imperative that Plaintiff immediately sign or face the consequences detailed above. It is notable that Plaintiff had complained just prior to this event to Sean Greene that she felt that she was being treated unfairly and that it appeared to her that The Firm operated as an "all boys club". Plaintiff was given no opportunity to review, discuss, negotiate or modify the terms of the arbitration agreement.

The arbitration agreement was a contract of adhesion that was prepared exclusively by SIG/M who had excessive bargaining power enhanced by the circumstances that they created as detailed above. It was presented in a take-it-or leave it fashion. The Plaintiff had no meaningful choice but to sign given the circumstances. Under these circumstances of both duress and coercion, the mandatory arbitration agreement cannot stint as a legally binging document.

**B. Plaintiff Factors**

At the time of her termination, Plaintiff was a single mother who provides the total support for herself and a pre-school child. She has no other means of support than her own employment. Plaintiff has student loans of upward of $200,000 that require substantial monthly payments.

Plaintiff had voluntarily left a secure position as a well-respected attorney with Travelers Indemnity Company in order to accept an offer from SIG which represented greater financial opportunity. She was happy, well-respected, financially successful and highly regarded in all of her employment reviews at Travelers Indemnity Company. She would not have left had it not been for the complete negotiated terms of her employment agreement which included, increased compensation, an equity stake in her settled claims, and a more prestigious position in heading the litigation department. She was also offered complete medical and life insurance benefit to be paid by the Firm for her and her dependent. She left her position with Travelers for the promise of a better life that would be afforded by these complete terms of employment that were negotiated and agreed to by both parties *prior to her resignation from Travelers* and prior to commencing employment with SIG.

The terms of the employment package were complete as represented to her in a phone call from William McAfee, the principal who was hiring made no mention of a requirement for signing either an employment agreement or a mandatory arbitration agreement. Before leaving Travelers, Plaintiff would **never** have accepted a position that required the signing of a mandatory arbitration agreement. The fact that one was presented to her not only after her hiring but greater than ten (10) weeks into the job shows bad faith on the part of SIGM. The

timing of the presentation of the arbitration agreement left Plaintiff with no leverage or bargaining power, power which she had had at time when she negotiated the terms of her employment and was still gainfully employed by Traveler's Indemnity.  The fact that she had long ago resigned from Traveler's when the arbitration agreement was presented, had worked for several weeks for SIG/M, and committed herself and her dependent child to the employment terms of the new position left her with *no meaningful choice* in signing the arbitration agreement.

The fact that SIG/M not only demanded that she immediately sign the agreement under threat of immediate termination and the threat of withholding compensation, but that they also demanded that she backdate the agreement to correspond to the beginning of her employment with SIG/M is prima facia evidence that the Principals knew the circumstances surrounding the signing of the agreement were unfair and that they were applying undue high pressure tactics and coercion. The principals were well aware of Plaintiff's position as a single mother with no additional support  before she accepted the position with THE FIRM.  As a single mother, living paycheck to paycheck and with no other support available, Plaintiff had no choice whatsoever in signing the agreement.  It was sign or be fired. A mandatory agreement that is so unilaterally beneficial to the maker and

used as a means of preventing the discovery of criminal acts, presented under these facts, is coercive and unconscionable.

The Defendants controlled all of the Plaintiff's economic and financial circumstances and used these circumstances to impose severe economic duress. She was compensated not only by salary but also by a percentage of her settled cases. The proceeds for settled cases amounted to almost 50 percent of her total income. She was later told by both William McAfee and Sean Greene that she had an expected monthly target to meet, which was an entirely knew employment requirement. SIG/M used this compensation structure to manipulate her and her financial security by withholding settlement monies. In fact, the Plaintiff has a claim against the defendant for wage theft for a case that she settled and still has not been paid for at the time of the drafting of this motion. Moreover, the Defendant threatened and did in fact transfer cases that she had worked to near settlement to other other attorneys to deprive her of earned compensation. The Defendant controlled and manipulated all of these factors and were able to use these factors or threat of manipulating the factor to use economic duress and coercion to influence the plaintiff.

One additional factor, the threat of termination was particularly onerous given a climate of economic recession in the United States at the time that all of these events transpired. There were few jobs advertised for attorneys at that time,

particularly for an attorney with Plaintiff's current income commensurate with her experience.  She knew that threat of termination amounted to a threat of unemployment and no income—a fact that materialized after her termination with nearly 18 months of unemployment.  The take-it-or-leave it tactics, the high pressure tactics, the deception, the coercion, and all of the circumstances surrounding the signing of the agreement gave the Plaintiff absolutely no meaningful choice but to sign.

<b><u>Substantive Unconscionability</u></b>

Plaintiff asserts that the Arbitration Agreement is invalid.  When a party challenges the validity of an arbitration agreement,the question of arbitrability is for the Court to decide, and not the arbitrator. <u>Opalinski v. Robert Half International Inc</u>., Case No. 12-4444 (3d Cir. July 30, 2014).   Under Florida Law, "neither the statutes validating arbitration clauses nor the policy favoring such provisions should be used as a shield to block a parties access to a judicial forum in every case."  Global Travel Marketing, Inc. v. Shea, 908 So. 2d 392, 397 (Fla. 2005)  The issue of "whether a valid written agreement to arbitrate exists is controlled by the principles of state contract law."  <u>Shotts v OP Winter Haven, in.</u>, 86 So. 3d 456, 464, 471 (Fla. 2011.)  In <u>Seifert v. U.S. Home Corporation, et al</u>. 750 So.2d 633, 636(Fla. 2011), the Supreme Court of Florida, which governs the

validity of a contract, has held that in ruling on a motion to compel arbitration, three factors ***can*** be considered :

      1) whether a **valid** written arbitration agreement exists;

      2) whether an arbitratable issue exists; and

      3) whether the right to arbitrate has been waived

The arbitration agreement at hand is both procedurally unconscionable, and substantively unconscionable. (Romano ex del Romano v. Manor Care, Inc., 861 So. 2d 59 ( 4th DCA 2003)  In the present case, Plaintiff has presented an instance where both the arbitration agreement itself is unconscionable because it required Plaintiff to give up a civil right to have trial by jury; a federal statutory right, ( Title VII), gender discriminations; and an attempt to nullify her duty to report criminal and unethical activities;  as well as an instance in which  the facts surrounding the signing of the agreement are unconscionable.   Plaintiff was presented the agreement far into her employment and had no choice but to sign the agreement, under the threat of immediate termination and the withholding of wages.  Plaintiff is owed still owed money for back wages and settlement money after thirteen months of being terminated.  Plaintiff filed a wage theft claim with Broward County, FL, attached hereto ( Ex.2).

The arbitration agreement itself was used by SIG to shield criminal behavior from discovery.   Moreover, once Plaintiff had raised the issue of gender

13

discrimination to her direct supervisor, Sean Greene, the arbitration agreement was used as a means of limiting her access to the Courts. "A contract is unconscionable when it is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Brennan v. Bally Total Fitness, 198 F. Supp.2d 2d 377, 88 FEP Cases (BNA) 335 (S.D. N.Y., 2002): "A contract is unconscionable when there is an absence of meaningful choice on the part of the parties together with contract terms which are unreasonably favorable to the other party". ( Id.)

     The terms of the agreement are one-sided and patently unfair to the Plaintiff. The terms of the agreement were drafted exclusively by SIG/M with terms that egregiously favored Defendant. The Plaintiff had no opportunity to review the agreement as detailed in the circumstances of signing above. In fact, she was not given time to read the agreement and did not have the opportunity to read the agreement due to the coercive, high pressure tactics, and duress imposed by the Defendants until after she signed. Had she not discreetly made a photocopy of the agreement when Ms. Fitzgerald momentarily left the room, she would have not had her photocopy or any copy of the agreement to be reviewed, after the fact.

     The Plaintiff had absolutely no opportunity to modify the terms of the agreement. The Plaintiff was required to give up every conceivable legal remedy through the judicial system ranging from wage compensation claims to claims

relating to violations of her civil rights as guaranteed by the United States Constitution.  The Defendant, on the other hand, reserved the right for injunctive and equitable relief through the "appropriate court of competent jurisdiction" for disputes relating to the employee.  This gross disparity in demanding that the Plaintiff submit to arbitration for all claims and yet reserve the right for SIGM to have access to the Court System "at its will" is so unconscionable as to be unenforcible. The agreement uniformly favors SIGM, the drafting party who holds all the bargaining power, on every level.   Likewise, it strips the Plaintiff of the very rights that it reserves for itself.  In <u>Desiderio v. Nat'l Assoc. of Securities Dealers, Inc.</u>, 191 F.3d 198 (2nd Cir.) at 207, the Court ruled "arbitrations agreements that bind both parties to arbitration may not be said to favor the stronger party unreasonably."  In the instant case, the terms are so unilaterally favorable to SIGM at the expense of the plaintiff that it unconscionable and unreasonable as to be unenforcible.

    The Mandatory Arbitration Agreement is so overreaching that it attempts to strip the plaintiff of access to the Judicial System for issues that have been determined to be a matter for the courts decision and not for an arbitrator.  In <u>Puleo v. Chase Bank USA</u>, N.A. 605 F. 3d 172, 179-80 (3rd Cir. 2010,) the Court ruled that "when a party challenges the validity of an arbitration agreement… a question of arbitrability is presented…that is presumptively for the Court, not the arbitrator

to decide.  The Third Circuit Court is  unanimous on this point and  went on to say that the Court of Appeals are unanimous ( Id. at 180) as  violation of accepted adjudicated protections by the Courts.  The arbitration agreement states:  "The claims covered by this agreement include…claims regarding or disputing the enforceability of this Agreement."

 Plaintiff submits that the extensive discussion above regarding the procedural and substantively unconscionably of the arbitration agreement renders it invalid and unenforcable.  The Plaintiff asserts that given the complex nature of the whistleblower and gender discrimination claims which require extensive discovery render these claims unarbitratable issues which must be decided in this Federal Forum. There is no other forum available to Plaintiff  in which to adjudicate her claims for both Whistleblowing and Gender Discrimination than Federal Court.  Plaintiff knew that Defendant's controlled all of the evidence that she needed to prove all of her causes of action.  Plaintiff requested of Defendant's and the Arbitrator a reasonable period of time nine (9) month within which she could reasonably conduct the discovery needed to support her claims.  However, in a arbitration hearing on July 2, 2014, Plaintiff was told that the arbitrator would be away for the month of July, and that the final hearing could either be in September or November 2014, but no later than the end of 2014 in the "spirit of AAA."  When Plaintiff protested because Defendant's had not only blocked her efforts to

take *any* discovery up until that point ( see Exhibit 4), but she was told by the Arbitrator that the limited amount of time would be to *her* benefit. Defendants went so far as to raise a defensive motion to the "threshold issue" of whether Plaintiff should be allowed to take any *discovery whatsoever*. (Id.) The final hearing in arbitration was set for November 10, 2014.  Defendants had Plaintiff's discovery requests since April.  Plaintiff submits that there was not forum other than Federal Court for her to adjudicate her causes of action.

    The Plaintiff further submits that the Defendant and their counsel engaged in illegal acts designed to illegally elicit information from the Plaintiff regarding her claims through acts of witness tampering.   Defendants intended to force to the Plaintiff to withdraw her claims from federal courts, to stop her cooperation with law enforcement, and to discourage in her pursuit of any other relief by their further illegals actions to harass, to defame, to libel, to disparage, and to intimidate the Plaintiff.  The Plaintiff asserts that by engaging in these additional criminal activities to effectively block her access to this Court, that they waived any validity of the arbitration agreement.

    In the event that the is Honorable Court finds that the arbitration agreement is valid, Plaintiff submits that the criminals acts of Defendants and their counsel have waived any right to have this matter decided by  AAA ( See Doc. 31) ( See also, Maronian et al, v. American Communications Network 6:07- cv-06314, No.

14 (W.D.N.Y. Jan. 14, 2008). From the moment Plaintiff filed this cause of action before this Honorable Court, she has been subjected to ongoing acts of witness tampering meant to illegally illicit information and cause her to withdraw this lawful action. These criminal actions, with complete documentation and facts, is filed in Plaintiff's *Motion For Emergency Hearing And Sanctions For Ongoing Harassment and Witness Tampering; Motion to take limited Discovery and Request for Extension of Time To Respond to Defendant's Motion to Compel Arbitration/ Motion To Dismiss* filed on August 21, 2014 with this Court. ( Doc 31)( See also (Add 4th DCA case and maybe Seifert)

    Although Defendants assert that Plaintiff was forum shopping when she filed this action in Federal Court, it is a superficial argument put forth by Defendants to denigrate Plaintiff in their numerous assertions that she was somehow looking for a better deal than she would have gotten in arbitration. Plaintiff can show her good faith and intent in filing this action in this Honorable Court by revealing a personal email sent to her sister expressing her relief in filing her meritorious action before this Honorable Court as well as any and all non-privileged emails relating to her filing meritorious.

    WHEREFORE,  Plaintiff prays for relief that this Honorable Court will enter an order denying Defendant's Amended to Stay Proceedings and Compel Arbitration, or Alternatively Motion To Dismiss. Alternatively, in the event this

Honorable court grants Defendants' motion, Plaintiff request that this Honorable Court stay her motions on the issues of witness tamper and ongoing harassment and will permit her to take limited discovery thereto, and will stay jurisdiction on the issue of sanctions against Defendants and their attorneys, Michael Pike and Daniel Lustig.

Respectfully submitted,

/s/   Hilary N. Chulock
Fla. Bar No. 672602
Pro Se Plaintiff
The People's Law Firm, PLLC
935 N.E. 125th ST
North Miami, FL 33161
hchulock@icloud.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing has been furnished via email on this 25th day of August, 2014 to Counsel for Defendants: pike@turnpikelaw.com, lustig@turnpikelaw.com.

/s/   Hilary N. Chulock
Fla. Bar No. 672602
Pro Se Plaintiff
The People's Law Firm, PLLC
935 N.E. 125th ST
North Miami, FL 33161
hchulock@icloud.com
ph:  (305)862-0456
fax: (305)862-0457

20